UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

ANGELA GEORGES,

          Plaintiff,

v.

DOMINION PAYROLL SERVICES, LLC,

          Defendant.

Civil Action No. 3:16-cv-777

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Dominion Payroll Services, LLC ("DPS" or the "Company"), by counsel, submits this memorandum in support of its motion for summary judgment of the Complaint of Plaintiff Angela Georges ("Georges" or "Plaintiff"), alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA"). DPS is entitled to summary judgment in this case because:

- Plaintiff cannot prove a *prima facie* case of age discrimination in violation of the ADEA;

- Plaintiff cannot show that DPS's stated reason for her termination (i.e., poor performance) is merely a pretext for unlawful discrimination;

- Plaintiff's case is based on self-serving speculation, which, in some cases, is at odds with not only the facts, but also her own Complaint;

- Plaintiff failed to mitigate her damages; and

- Plaintiff cannot recover damages for pain and suffering, liquidated, and punitive damages.

## I.   INTRODUCTION

Plaintiff's Complaint cannot stand because of the utter lack of evidence that DPS terminated her employment because of age discrimination.   At the motion to dismiss stage, the Court observed that Georges pleaded enough allegations "that raise a right to relief above the speculative level" to establish that she suffered an adverse employment action because of her age.   (Mem. Op. Aug. 24, 2017 [Doc. 13] at 9 (internal quotations omitted)).   After the completion of discovery, however, the evidence reveals that Georges still has only speculation and false assumptions to support her claim.   The Court previously noted that the Complaint contained "no obvious alternative explanation that the decisionmakers simply judged the person hired to be more qualified and better suited for the position."   (*Id.* at 10 (internal quotations omitted)).   After the full opportunity to discover evidence to support pretext, however, Georges still has no evidence to prove the alleged pretext of the legitimate nondiscriminatory reason behind her termination: that she exhibited poor performance over the course of her short two and one-half months of employment.   Rather, the undisputed facts—much of which is confirmed by Georges's own sworn testimony—reveal that her allegations have been and remain unsupported by admissible evidence.

Although DPS submits multiple reasons why summary judgment is warranted, this case at its core is simply about a plaintiff bringing a federal claim without any factual support other than her own self-serving belief that she was a suitable employee and was "shocked" by her employer's decision to terminate her.   In fact, as noted further below Plaintiff has since admitted in her sworn deposition that she lacked knowledge about, or was simply wrong about, critical allegations that formed the basis of her claim.   For example, Georges pleaded in her Complaint that DPS hired an employee who was paid less.   Compl. ¶ 27.   In her sworn deposition

2

testimony, however, Georges confirmed that she had no knowledge of what DPS actually paid this employee (i.e., Jessica Gleason).   As discussed herein, Gleason was actually paid a significantly higher wage than Georges.   Georges also alleges in her Complaint that Gleason "filled her position."   Compl. ¶ 27.   Yet, in her sworn deposition testimony, Georges admits that Gleason was an existing employee of DPS and that she transferred into the Benefits Implementation Specialist Position prior to Georges' termination from employment.   In her Interrogatory Responses, Georges states that Gleason worked as a receptionist or in customer service and did not have any industry experience.   Yet, in her sworn deposition, Georges admitted that Gleason worked in payroll implementation.

Rather than material facts being in genuine issue, the only factual dispute in this case is within Plaintiff's own shifting allegations.   Plaintiff can proffer no evidence to support her claim of age discrimination, which makes summary judgment appropriate in this case.

## II.    STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed, based on admissible evidence established through the pleadings and discovery in this case:[1]

1.      Georges is a fifty-three (53) year old female.  She was born on March 18, 1964, and at the time of employment with DPS, she was fifty-one (51) years of age.    Complaint of Angela Georges ("Compl.") ¶¶ 5, 7.

2.      DPS is a provider of human capital services.   Headquartered in Richmond, Virginia, the Company also has offices in North Carolina, Tennessee, Texas, and Florida.  DPS assists clients with a wide range of human resources functions, including payroll, employment

---

[1] These undisputed facts will be referred to hereinafter as "Fact No. ___."

3

policies, timekeeping, pre-employment screening, and compliance.  Decl. of David Gallagher ¶ 4 (Mar. 1, 2018), attached as **Exhibit A.**

3.      DPS hired Georges as a Benefits Implementation Specialist on May 4, 2015. Compl. ¶ 15.

4.      At all times, Georges worked as an "at will" employee and never had an employment contract with DPS.  Dep. Tr. of Angela Georges 9:14–10:2, 11:18–24, Dep. Ex. 1 (Jan. 9, 2018), attached as **Exhibit B**.

5.      The Benefits Implementation Specialist position provided DPS clients with payroll and human resources support related to the implementation of regulations under the Patient Protection and Affordable Care Act of 2010 ("ACA").   Exhibit A ¶ 11; Dep. Tr. of Laura (Johnson) Perry 16:10–17:9 (Feb. 9, 2018), attached as **Exhibit C**; Exhibit B at 22:19–23.

6.      The Benefits Implementation Specialist Position was a new position at DPS in 2015.  Exhibit A ¶ 10; Exhibit C at 9:3–6.

7.      The requirements for the Benefits Implementation Specialist Position were: (1) an Associate Degree from an accredited school; (2) a minimum of three years of experience in employee benefits or equivalent combination of education and experience; (3) understand the functionality and intention of benefits administration systems; (4) knowledge of all pertinent federal and state regulations affecting employee benefits; (5) strong analytical and problem solving skills; (6) strategic thinker who works well in a team environment, brings innovation, creativity and critical thinking to the table; (7) must be motivated, proactive and exhibit strong project management skills in order to meet client deadline in a timely matter; (8) excellent communication skills verbal and written; (9) strong presentation skills for online and on site client training when necessary; (10) must be flexible to overtime when necessary; (11)

demonstrated ability to provide high level of customer service; (12) proficient knowledge of Microsoft Office programs, advanced knowledge in Excel; (13) must be tech savvy.  Exhibit A ¶ 11; Dep. Tr. of David Gallagher 43:24–44:7, Dep. Exs. 3 & 4 (Dec. 12, 2017), attached as **Exhibit D**; *see also* Compl. ¶ 14; Exhibit C at 18:22–19:12 .

8.      Laura Johnson[2] ("Johnson") (30 years old in 2015), DPS Director of Benefits Administration, interviewed Georges for employment with the Company and made the decision to hire her.  Exhibit B at 8:15–9:6; Exhibit C at 14:15–16, 14:23–15:6, 37:10–15.

9.      Lora Meade[3] ("Meade") (49 years old in 2015), Director of Human Resources, also participated in Georges's interview for employment.  Exhibit B at 8:15–9:6; Exhibit C at 14:23–15:6.

10.     Johnson reviewed Georges's resume prior to hiring her.  Exhibit C at 15:15–16.

11.     Georges made $21.15 per hour during her employment with DPS.  Exhibit A at ¶ 12; Exhibit B at 12:8–9.

12.     Johnson served as Georges's direct supervisor during the entirety of Georges's employment with DPS.  Exhibit A ¶ 9; Exhibit B at 23:11–13.

13.     Prior to working for DPS, Georges had no specific experience with implementing ACA regulations.  Exhibit B at 23:14–17.

14.     Prior to working for DPS, Georges had no experience with the software the Company used to support clients.  Exhibit B at 15:25–16:2.

15.     Georges got along well with Johnson during her employment.  Exhibit B at 43:16–18.

---

[2] Since her resignation from DPS, Laura Johnson changed her name to Laura Perry.  She will be referred to herein as "Johnson."

[3] Since her resignation from DPS, Lora Meade changed her name to Lora Mullins.  She will be referred to herein as "Meade."

16.     Georges received the same training as all other Benefits Implementation Specialists.  Exhibit C at 20:14–21:9.

17.     Prior to hiring Georges, Johnson hired another employee named Leanna Follis ("Follis") in March 2015 to work in her department as a Benefits Implementation Specialist. Exhibit A ¶ 13; Exhibit B at 33:9–16; Exhibit C at 13:3–5.

18.     Johnson made the decision to hire Follis.  Exhibit A ¶ 14; Exhibit C at 13:3–5.

19.     Johnson served as Follis's supervisor.  Exhibit A ¶ 15.

20.     Follis was fifty-three (53) years of age at the time of her hire.  Exhibit A ¶ 16.

21.     DPS paid Follis $26.15 per hour in 2015.  Exhibit A ¶ 17.

22.     Follis worked as a Benefits Implementation Specialist until May 2017, when she resigned her employment with DPS.  Exhibit A ¶ 18.

23.     Georges and Follis performed duties and functions of Benefits Implementation Specialists.  Exhibit A ¶ 13, 19; Exhibit B at 20:14–22.

24.     DPS transferred a current Company employee named Jessica Gleason ("Gleason") (then 26 years old) to work as a Benefits Implementation Specialist on July 1, 2015.  Exhibit A ¶ 19, 29.

25.     DPS began discussing transferring Gleason to the Benefits Implementation Specialist position in April 2015.  Exhibit A ¶¶ 29–30; Exhibit C at 13:6–14:11.

26.     Johnson was Gleason's supervisor in 2015 when Gleason transferred to the Benefits Implementation Specialist position.  Exhibit A ¶¶ 29–31; Exhibit C at 35:16–36:2.

27.     Prior to her transfer, Gleason worked as a Lead Implementation Specialist in DPS's Payroll Department.  Exhibit A ¶¶ 25–28; Exhibit B at 33:17–34:6.

28.     Gleason was qualified for the position of Benefits Implementation Specialist when she accepted the transfer in June 2015.  Exhibit A ¶¶ 30–31, 33–36; Exhibit C at 34:16–35:9.

29.     Gleason had over seven years of experience working in the employee benefits field at the time of her transfer.  Exhibit A ¶¶ 19–31, 35.

30.     Although Gleason did not possess a full college degree, DPS's records reflected that she possessed an Associate's Degree at the time of her transfer to the Benefits Implementation Specialist position.  Exhibit A ¶ 35.

31.     Gleason possessed a college degree and had knowledge and demonstrated skill working with DPS's software.  Exhibit A ¶¶ 19–31, 34–35.

32.     Georges was aware that Gleason was not a receptionist at DPS when she transferred to the Benefits Implementation Specialist Position, but rather worked in payroll implementation.  Exhibit B at 33:17–34:6.

33.     DPS paid Gleason $27.03 per hour in 2015 soon after her transfer to the Benefits Implementation Specialist position.  Exhibit A ¶ 32.

34.     Georges had no knowledge of Gleason's salary with DPS.  Exhibit B at 34:16–35:1.

35.     DPS employed Georges for a period of approximately two and one-half (2.5) months from May 4, 2015 until her termination from employment on July 13, 2015.  Compl. ¶¶ 15, 19; Exhibit B at 8:10–14, 23:22–24; Exhibit C at 16:2–4.

36.      DPS received complaints from three different clients regarding Georges's work performance.  Exhibit C at 28:16–29:16, Dep. Ex. 3.

37.     Georges spent time using her personal Facebook account while at work.  Exhibit B at 36:2–4.

38.     On July 6, 2015, Johnson prepared an e-mail documenting performance concerns related to Georges.  Exhibit C at 27:17–28:15, Dep. Ex. 3.

39.     Johnson made the decision to terminate Georges from employment with DPS. Exhibit B at 23:18–24:3; Exhibit C at 37:16–23.

40.     Georges was terminated for poor performance on July 13, 2015.  Compl. ¶ 19; Exhibit A ¶¶ 39–40; Exhibit C at 38:9–11.

41.     During Georges's termination meeting, Johnson told Georges that DPS was terminating her employment because the job was not a good fit, because of her performance problems and because of a customer complaint.  Exhibit C at 38:9–11; Plf.'s Resp. to Def.'s Interrogs. No. 3 (Dec. 15, 2017), attached as **Exhibit E**; *see also* Plf.'s EEOC Charge of Discrimination, attached as **Exhibit F**.

42.     After terminating Georges from employment, DPS assigned her work initially between the other two existing Benefits Implementation Specialists, Follis and Gleason.  Exhibit A ¶ 44; Exhibit B at 33:9–16.

43.     Georges never complained about age discrimination to anyone at DPS.  Exhibit B at 36:21–25.

44.     Georges does not allege that anyone at DPS ever directed disparaging comments to her based on age.  Exhibit B at 32:16–33:1.

45.     The basis Georges provides for her belief that her termination was because of age is her theory that DPS wished to save money by replacing her with Gleason, whom Georges believed was paid less because of her younger age and relative experience.  Exhibit B at 33:2–6

46.     Georges's only other reason for believing DPS discriminated against her was because she was "shocked" by her termination from employment.  Exhibit B at 32:16–33:1, 44:18–19.

47.     Georges does not claim that she suffered any health problems as a result of her termination from DPS.  Exhibit B at 42:22–43:4.

48.     Georges never applied for any positions in the human resources field after her termination from employment with DPS.  Exhibit B at 43:9–15; Exhibit E at Interrog. Resp No. 5 (documenting only one application for human resources-related position and otherwise identifying only secretarial and administrative assistance positions).

49.     Georges began working as a secretary with Loudoun County Public Schools in November 2015.  Her wages were $16.00 per hour, and she received medical, dental, vision and retirement (401k) benefits.  Exhibit B at 27:10–28:2.

50.     In November 2016, Georges received a wage increase with her position as a secretary at Loudon County Public Schools to $19.24 her hours and continued to receive benefits as a public employee.  Exhibit B at 26:8–27:2.

51.     Georges voluntarily resigned her position with Loudoun County Public Schools on January 2, 2018, to accept a position through a temporary staffing agency, Employment Enterprises, where she makes $18.00 per hour and does not receive any benefits unless she remains employed in April 2018.  Exhibit B at 24:13–25:23, 26:14–22.

52.     Georges' position with Employment Staffing is a three-month position, although she hopes that it will lead to a permanent position.  Exhibit B at 25:1–6.

## III.    ARGUMENT

### a.   Standard of Review for Summary Judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013).   "Summary judgment procedure is properly regarded not as a disfavored shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).   Indeed, there is an "affirmative obligation of the trial judge to prevent 'factually unsupported claims . . . ' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 324–25).

The party who bears the burden of proof must provide "significant probative evidence tending to support the complaint" or provide "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) (internal quotation omitted).[4]   On summary judgment, after the movant has established evidence supporting its motion or asserted the absence of essential evidence to support the non-movant's claim, the burden of production shifts to the non-movant to identify specific evidence illustrating genuine and material issues of fact requiring trial. *See Celotex Corp.*, 477 U.S. at 322–34.   Thus, mere allegations are insufficient, and "a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome summary judgment]; there must be evidence on which the jury

---

[4] Under Fed. R. Civ. P. 56, facts in support of or in opposition to a motion for summary judgment do not need to be in admissible form; rather, it is sufficient if they *could be* put in admissible form. *Jones v. W. Tidewater Reg'l Jail*, 187 F. Supp. 3d 648, 653–54 (E.D. Va. 2016) (Davis, J.) (Norfolk Div.) (finding that because medical records could be admissible if authenticated by an affidavit from the custodian of records they could be relied upon for summary judgment purposes).

could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *Austin v. Clark Equip. Co.*, 48 F.3d 833, 836 (4th Cir. 1995) (requiring plaintiff to show more than "metaphysical doubt" that genuine issues exist). "While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often a critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996) (citations omitted).

### b. Plaintiff Cannot Establish that DPS Violated the ADEA.

Plaintiff cannot establish a claim of age discrimination under the ADEA as a matter of law. The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1). Critically, a plaintiff asserting age discrimination must ultimately prove that age "was not merely a motivating factor of the challenged adverse employment action but was in fact its 'but-for' cause" of the action. *Hartman v. Univ. of Md. at Baltimore*, 595 F. App'x 179, 181 (4th Cir. 2014) (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009) ("Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.").

To establish a *prima facie* case for disparate treatment[5] based on age, a plaintiff may do so through direct or circumstantial evidence. Direct evidence requires proof that the employee's

---

[5] Georges appears to have alleged only a claim of disparate treatment, meaning that she claims DPS treated her differently as an individual based on her protected characteristic of age. *See, e.g., Hazen Paper v. Biggins*, 507 U.S. 604, 609 (1993). Liability in such cases hinges on the existence of a discriminatory motive. *Id.* Georges, to date, has not asserted any claim of disparate impact, which would have required allegations that an employment decision that is facially neutral on its face in the treatment of a different group, in fact, falls more harshly on one group than the other. *See, e.g., Smith v. City of Jackson*, 544 U.S. 228, 239 (2005). In such a case, there is no liability when the employer's decision is based on a reasonable factor other than age. *Id.* at 423. The Complaint is devoid of any allegation, whether expressly alleged or

11

age was the "but for" cause of the adverse action. *See Gross*, 557 U.S. at 174. Although the Supreme Court has not expressly held that the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), used for Title VII disparate treatment actions, also extends to ADEA claims, the Fourth Circuit has had no difficulty applying this familiar burden-shifting framework to the ADEA for plaintiffs who proceed with circumstantial evidence. *See, e.g., Smith v. Flax*, 618 F.2d 1062, 1067 n.3 (1980). As this Court well knows, intentional age discrimination under this evidentiary analysis requires proof that:

> (1) she is 'a member of a protected class'—that is, forty years or older; (2) she 'suffered adverse employment action;' (3) she 'was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open' or she was replaced by a substantially younger person.

*Hartman*, 595 F. App'x at 181 (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)).

The third element, related to whether a plaintiff met the reasonable or legitimate expectations of the employer at the time of the adverse action (i.e., whether she was "qualified"), is most often disputed, as in the case at bar. However, this element "requires the employee to demonstrate 'that [s]he was 'qualified' in the sense that [s]he was doing [her] job well enough to rule out the possibility that [s]he was fired for inadequate job performance, absolute or relative.'" *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515 (4th Cir. 2006) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)). The employer may counter plaintiff "with evidence

---

implied, that a protected group of workers—individuals older than 40 years of age—have been disparately impacted by DPS's actions or policies (neutral or otherwise) or that anyone else similarly situated to her (e.g., Follis) has been impacted. More importantly, no evidence exists in the record of such allegations. Accordingly, DPS will refrain from any analysis of Georges's claim based on disparate impact.

defining the expectations as well as evidence that the employee was not meeting those expectations." *Warch*, 436 F.3d at 516.

A plaintiff's own subjective assessment of her own job performance is irrelevant to this inquiry. *See Laber v. Harvey*, 438 F.3d 404, 430–32 (4th Cir. 2006) (plaintiff's own conclusory assertions that he was able to perform aspects of his job were insufficient to show that his education, experience, or training made him qualified). Further, "[a plaintiff's] own testimony, of course, cannot establish a genuine issue as to whether [she] was meeting [the employer's] expectations." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Evans*, 80 F.3d at 960–61 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (citation omitted))). Failing to make this minimal showing should be fatal to a plaintiff's *prima facie* case. *See, e.g.*, *Warch*, 436 F.3d at 515–16; *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327–28 (7th Cir. 2002) (evidence that plaintiff was not meeting employer's legitimate employment expectations defeated plaintiff's *prima facie* case, absolving the need to skip over the *prima facie* analysis and skip to the pretext inquiry).

### i. Georges Cannot Establish Her *Prima Facie* ADEA Claim.

In this case, there is no direct evidence that Georges was terminated because of her age. It is undisputed that the legitimate, nondiscriminatory reason provided by DPS to Georges at her termination meeting was poor performance. Fact No. 40. Georges, therefore, must establish her claim of age discrimination based on circumstantial evidence under the *McDonnell-Douglas* framework.

Georges can likely establish the first and second prongs of the *McDonnell-Douglas* evidentiary inquiry. It is undisputed that at the time of her discharge, she was over 40 years old, Fact No. 1, and that her employment was involuntarily terminated, Fact No. 35. In support of the

third prong, Georges contends that she performed to the satisfaction of DPS such that she was "shocked" by the news of her termination.  As to the fourth prong, Georges claims that she was replaced by a younger worker, specifically Jessica Gleason, who was 26 years old at the time. Contrary to Plaintiff's assertions, these last two prongs fail as a matter of law based on the undisputed facts of this case.

The third prong regarding Georges's qualifications, however, is unsupported by the undisputed evidence.  At the outset, it bears emphasis that when evaluating the qualifications or performance of an employee subject to an adverse employment action, "[i]t is the perception of the decision maker which is relevant."  *Flax*, 618 F.2d at 1067.  Indeed, this Court should not sit as a "super-personnel department" by reviewing and substituting its judgment for that of the employer.  *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("Our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory.  Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998) (motivation of the actual decision-maker is most relevant to the question of alleged discrimination); *Bailey v. Anne Arundel County*, 259 F. Supp. 2d 421, 429 (D. Md. 2003) ("In a[n] . . . ADEA case, a court should not act as a 'super-personnel department' and undertake to determine whether a defendant's perceptions of an employee's qualifications are erroneous, without regard to the defendant's ability to assess the full dimension of its employees' qualifications and its ability to view its employees in a work environment.").

Here, the overwhelming, undisputed evidence shows that Georges failed to meet DPS's legitimate and reasonable expectations, established through her job description and her direct supervisor, Laura Johnson. *See* Fact No. 7 (describing Johnson's expectations of and training provided for the Benefits department generally, and Georges' failure to meet such expectations or improve despite additional one-on-one training). Johnson, who is no longer employed by DPS, provided sworn testimony about her first-hand observation of Plaintiff's persistent poor performance, which she contemporaneously documented in an email she sent to herself on July 6, 2015. Fact Nos. 36, 38. These issues include the receipt of three customer complaints about Georges's performance, her inappropriate use of social media and the Internet on Company time, her lack of communication, and her inability to complete tasks. *See* Fact No. 36–37. Georges admitted in her sworn deposition to using Facebook while on Company time. *See* Fact No. 37. Ultimately, Johnson testified that, in her sole discretion, Georges's "lack of performance" was the sole reason for her termination on July 13, 2015. *See* Fact Nos. 39–41.

For summary judgment, Johnson's testimony described above is undisputed in the record. Georges has offered no evidence other than her own self-serving testimony that she received positive feedback from Johnson "in the past" to counter Johnson's corroborated testimony. *See* Exhibit B at 44:18–21. But even assuming Georges can point to specific evidence of this past positive feedback, Johnson's counseling for poor performance on July 6, 2015, is not inconsistent with Georges' unsupported theory, which by itself cannot establish a genuine issue of material fact. *See Laber*, 438 F.3d at 430; *Malghan v. Evans*, 118 F. App'x 731, 733 (4th 2004); *King*, 328 F.3d at149. Not to mention that past performance reviews are not usually relevant to whether an employee's current performance was satisfactory at the time of the adverse

employment decision. *See O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 547 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996).

Key to determining whether Georges can prove that she met DPS's legitimate and reasonable expectations for performance, is whether Georges can point to competent, relevant evidence that she met the expectations of Johnson. She cannot. Nor has she asserted, nor is there proof that Johnson's expectations were unreasonable or not legitimate. Georges cannot submit sufficient relevant evidence to create a question of fact as to whether her supervisor's expectations were reasonable and legitimate, or whether those expectations were truly met in the eyes of her employer. No such evidence exists. Therefore, Georges cannot point to evidence suitable for summary judgment that she was doing her job well enough to rule out the possibility that she was fired for inadequate job performance. *See Warch*, 435 F.3d at 515.

Finally, Plaintiff cannot satisfy the fourth prong of her *prima facie* case. Georges alleges that she was replaced by Jessica Gleason (i.e., her alleged comparator). Compl. § 27. The undisputed facts, however, demonstrate that Gleason never replaced Georges after her termination. Rather, Gleason was a long-standing employee of DPS whom the Company transferred into the Benefits Implementation Specialist position prior to when Georges was terminated from employment. Fact Nos. 17, 24, 29. *See also*, Exhibit B at 33:9-16. After Georges's termination, her work was initially split between the two remaining Benefits Implementation Specialists, Gleason (age 26) and Leanna Follis (age 53). Fact No. 42. The undisputed facts show that Georges was never replaced by Gleason as she alleged in the Complaint. Rather, the department's work simply continued for a time with two employees, rather than three.

For Plaintiff's inability to offer any evidentiary support for the third and fourth prongs of her ADEA claim—other than her own self-serving testimony—the Court should determine that she cannot establish a *prima facie* case as a matter of law.

### ii. DPS Articulated a Legitimate Nondiscriminatory Reason for Terminating Georges's Employment: Poor Performance.

Assuming *arguendo* that this Court finds Georges can establish a *prima facie* case through circumstantial evidence, which DPS does not concede, then DPS must articulate a legitimate non-discriminatory reason for terminated Georges's employment. *See Hill*, 354 F.2d at 285.   It is undisputed that DPS's asserted and consistently stated basis for terminating Plaintiff's employment was her poor performance. *See* Fact Nos. 40–41.  This is a legitimate, nondiscriminatory reason under the ADEA. *See King*, 328 F.3d at 149.[6]  DPS established its performance expectations through its job description of Georges's position, as reiterated by Johnson. *See* Fact No. 7.   Johnson trained all her employees in the same way—a fact that Johnson conceded in her sworn deposition. *See* Fact No. 16.   Despite this, Georges's poor performance led to three customer complaints and Johnson's observations of Georges's failure to communicate, failure to complete tasks on her own, and personal use of social media while at work. *See* Fact Nos. 36–38.   From Johnson's perspective, which is the only perspective that matters, *Tinsley*, 155 F.3d at 444, Plaintiff's poor performance was the sole factor behind the decision Johnson made to terminate her employment. *See* Fact Nos. 36–41.

---

[6] The reason for Georges's termination is also consistent with DPS's own written policies and procedures that prohibit unlawful discrimination or harassment, including harassment based on age. *See* Exhibit A at Ex. 12.

### iii.   Georges Cannot Prove the Legitimate Business Reason Articulated by DPS Was a Pretext for Age Discrimination.

After the employer satisfies its burden of production, "the presumption of unlawful discrimination created by the *prima facie* case 'drops out of the picture' and the burden shifts back to the employee to show that the given reason [is] just a pretext for discrimination." *Evans*, 80 F.3d at 959.   Throughout this burden-shifting framework, however, the plaintiff always bears the burden of proving ultimately that the employer intentionally discriminated because of her age.   *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (explaining that plaintiff's evidence of pretext typically merges with this ultimate burden of persuasion); *Evans*, 80 F.3d at 959.

To establish pretext, a plaintiff must discredit the employer's proffered reason by proving that it is unworthy of credence.   *See, e.g.*, *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).   "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."   *Evans*, 80 F.3d at 960.   Again, the court's duty is not to "second guess the propriety of an employer's legitimate nondiscriminatory reason for terminating an employee, as long as the proffered reason is not false."   *EEOC v. Reynolds Metals Co.*, 212 F. Supp. 2d 530, 539 (E.D. Va. 2002) (citing *DeJarnette*, 133 F.3d at 299)).

Here, Georges testified to only two possible theories of pretext to challenge DPS's claim that she exhibited poor performance: (1) DPS replaced Georges with a younger, less qualified or unqualified employee whom DPS could pay less and save money, *see* Fact No. 45, and/or (2) Georges was "shocked" to be terminated orally "without notice" such that DPS must have been motivated by discrimination based on age, *see* Fact No. 46.   The first basis is false, as established by undisputed facts. The second basis, even if true, is not unlawful nor adequate grounds for

18

asserting age discrimination by DPS.   Notably, Georges advances no evidence such as age-related comments or displays of discriminatory attitudes in the workplace, as evidence of pretext. Indeed, she testified that she is "not alleging any other discrimination acts" aside from the two pretextual theories mentioned above.  Fact Nos. 45-46.

### 1.  Georges Cannot Prove DPS Committed Age Discrimination to Save Money.

In her Complaint and in her deposition, Georges testified that Jessica Gleason was hired to replace Georges "because the company wanted to save money."  *See* Fact No. 45; Compl. ¶ 20.  Yet, she confessed under oath that she never saw any pay data concerning what Ms. Gleason was making.  *See* Fact Nos. 33–34.  In fact, Georges did not realize until her deposition on January 9, 2018—over one year after filing her Complaint alleging otherwise—that Ms. Gleason actually made more money than her.  Exhibit B at 34:16-35:1.  In 2015, Gleason was paid $27.03 per hour, while Georges was paid $21.15 per hour.  *Compare* Fact No. 33, *with* Fact No. 11.

Further evidence and arguments comparing Gleason's qualifications for the position with that of Georges are unavailing.   Georges disputes whether her qualifications for the position exceeded that of Gleason to advance her theory that DPS sought a less-experienced or unqualified candidate to save money.  Exhibit E at Resp. 10.  However, the undisputed facts in the record reveal that Gleason met the requirements of the job because, although she did not have a full college degree, she had an associate's degree, and she demonstrated skills and knowledge working with DPS's software accumulated from her experience working for DPS for approximately six (6) years preceding her transfer into the Benefits department.  Fact Nos. 30–32. Summary judgment is proper because the undisputed facts establish that Gleason was a qualified candidate for her position, contrary to Georges's unsupported allegations in her Complaint.  Gleason worked in several human resources positions within the DPS prior to her

transfer to the Benefits Implementation Specialist position and even briefly left the Company to work for a competitor. Fact No. 27. In fact, her immediate position prior to her transfer to the Benefits Department was Payroll Implementation Team Lead. Fact No. 28. In this position, she worked as the point person for the Payroll Implementation Department and also trained and oversaw the others in that department. Fact No. 25. Over the course of discovery, even plaintiff has had to concede that Gleason worked in payroll implementation. Exhibit B at 33:17-34:6. Plaintiff's unsupported claim that Gleason lacked requisite experience in the Human Resources field, or that she had had more prior experience directly related to the Benefits Implementation Specialist position is patently false.[7] Regardless, Gleason simply was not hired to replace Georges as a cost-cutting measure; given Gleason's long tenure at DPS, she was paid higher than Georges, rendering Plaintiff's pretextual theory without merit.

## 2. Georges Cannot Prove Pretext Based on Her Lack of Notice Prior to Termination.

In her deposition, the only other basis identified for her claim that DPS violated the ADEA is because "I felt that I was discriminated against for my age due to the fact that I was terminated verbally without any warning." Fact No. 46, Exhibit B at 32: 16–20. She explains further that "I was completely shocked at my termination . . . ." Fact No. 46, Exhibit B at 44:18–19. It is undisputed, however, that Georges was employed as an "at-will employee," Fact No. 4, which can be presumed as a matter of Virginia law in the absence of any applicable statute, custom, or contract. *See, e.g.*, *Perry v. Am. Home Prods. Corp.*, Civil Action No. 3:96cv595, 1997 U.S. Dist. LEXIS 2521, at *25 (E.D. Va. Mar. 4, 1997) (citing *Miller v. SEVAMP, Inc.*, 234

---

[7] Notably, the Benefits Department was a new department, which created the new position of Benefits Implementation Specialist, and which was intended to provide guidance on the then-new regulations under the ACA. Fact Nos. 5, 6. Georges admitted in her sworn deposition that she did not have any prior experience concerning ACA regulations prior to her employment with DPS, nor did she have any experience with DPS's software. Fact Nos. 13–14.

Va. 462, 468, 362 S.E.2d 915, 919 (1987)).   As an at-will employee, Georges was entitled to notice prior to her termination.   Indeed, it is well established that imposing on employers "a 'reasonable notice' exception to the employment-at-will doctrine would effectively eviscerate the at-will doctrine itself. No employee-employer relationship in Virginia could truly be 'at-will' if an at-will employee has a valid claim, whether for breach of implied contract or in tort, when reasonable notice is not given before termination." *Perry*, 1997 U.S. Dist. LEXIS 2521, at *24–25.   Further, even an unfair discharge may not be evidence of age discrimination under the ADEA. *See Vaughn v. MetraHealth Cos.*, 145 F.3d 197, 203 (4th Cir. 1998).   Georges's claim of discrimination based on her own "shock" at the lack of notice, therefore, does nothing to advance her claim of age discrimination and establishes no evidence of pretext to refute DPS's legitimate nondiscriminatory reason for terminating her employment.

Further, to the extent Georges intends to rely on expert testimony from Deb Cohen, Ph.D., opining that DPS violated some sort of industry standard regarding human resources policies and procedures, such testimony is the subject of DPS's Motion to Strike Supplementary Expert Designation, filed this same day [Doc. 39].   As set forth in that motion, which DPS adopts herein, Georges's expert appears to suggest that DPS failed to abide by the "best practice" standard by failing to disseminate to Georges its Employee Handbook, *see* Plf.'s Supp. Expert Disclosure [Doc. 38-1] at 2.   Even assuming arguendo this were true, that shortfall from a recommended "best practice" does not equate to a violation of the law under the ADEA and is irrelevant to whether DPS terminated Georges's employment because of her age.   Thus, Georges's expert does not even support her pretextual theory about being "shocked" because she was terminated without notice. The question for this Court is simply whether or not—regardless of DPS's distribution of its Employee Handbook—DPS's assertion of Georges's poor

performance was a pretextual reason for her discharge.  Accordingly, Georges's expert adds no probative value to her claim of age discrimination.

### 3.  Georges Cannot Prove She Was Treated Less Favorably than a Similarly Situated Employee.

In the absence of Georges's stated theories of pretext, she can only fall back on her basic claim that upon her termination, a similarly situated, but younger employee was treated more favorably.   Other than Jessica Gleason, no other similarly situated employee outside of the protected class of age has been identified by Georges as a point of comparison to support the notion that DPS treated her disparately based on age, all things being equal.   Yet, in doing so, Georges ignores another comparator in the Benefits Department, Leanne Follis.

Like Gleason and Georges, Follis held the title and duties of a Benefits Implementation Specialist, and she was directly supervised by Johnson. *See* Fact Nos. 12, 19, 23–24, 26.  While Georges was employed, Johnson treated all her employees the same in terms of training and establishing performance expectations, especially as to communication. *See* Fact Nos. 7–8.[8]

Unlike Gleason, however, Follis was in the same protected class as Georges, being over 53 years old at the time she was hired in March 2015; in fact, Follis was also hired by Johnson. *See* Fact Nos. 18, 20.  Yet, unlike Georges, Follis worked at DPS far in excess of Georges's short

---

[8] If anything, the evidence supports the assertion that Johnson permitted Georges to do less work than Gleason and Follis. *See* Exhibit C at 19:13–20:13 (comparing disparate workloads between, on the one hand, Follis and Gleason, and, on the other hand, Georges).  Assuming Plaintiff survives this motion for summary judgment, there is a plausible argument at trial, therefore, that Gleason and Follis were not similarly situated to the extent they were held to higher performance standards than Georges. *See, e.g., Hunt-Allen v. Branch Banking & Tr. Co.*, No. 0:12-127-JFA-SVH, 2013 U.S. Dist. LEXIS 136704, at *19 (D.S.C. June 18, 2013) (explaining that "similarly situated employees" must be established with "evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'").

2.5 month tenure—Follis worked at DPS until her voluntary resignation in May 2017, for a total employment at DPS of over 2 years. *See* Fact No. 22. Follis also was paid over five dollars ($5) an hour more than Georges. Fact No. 21. It is also undisputed that Follis assumed some of the duties left by Georges after her termination. *See* Fact No. 42. If, as Georges claims, DPS was seeking to bring in younger employees to save money, then it would be nonsensical for DPS to terminate Georges while continuing the employment of someone who was both older and made *more* money.

Thus, the strength, if any, of Georges's theory that she was replaced by a similarly situated person outside of her protected class is negated by the undisputed fact that DPS replaced some of Georges's duties with a similarly situated person *inside* the same protected class. While this is not a disparate impact claim, the presence of Leanne Follis in the Benefits Department before *and* long after Georges's hiring cuts deeply against Plaintiff's attempt to show pretext.

### 4. Georges Cannot Rebut the Same Actor Inference.

DPS's legitimate business reason for terminating Georges's employment is also entitled to an inference of nondiscriminatory intent. It is well established that this inference, known as the "same actor inference," can be drawn where the same decision maker both hired and fired the plaintiff in a relatively short time span. *See Proud v. Stone*, 945 F.2d 796–97 (4th Cir. 1991). The Fourth Circuit recognizes this inference because "claims that employer animus exists in termination but not in hiring seem irrational" because "[f]rom the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Id.* at 797 (internal quotations omitted). The same actor inference assisted the *Proud* court to find that the undisputed facts, where an employer who hired and fired a non-performing employee in

23

a four and one-half month time frame, "create[d] a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Id.* at 798.

In this case, it is undisputed that Laura Johnson was the same decision maker who hired and fired Georges. *See* Fact Nos. 8, 10, 39–41. It is also undisputed that Georges worked at DPS for a mere two and one-half months. *See* Fact Nos. 3, 35. Certainly, this Court may apply the same actor inference articulated in *Proud* where Georges was employed for far less time than the employment time periods cited in multiple cases where the Eastern District has applied the *Proud* inference to find no pretext by the employer. *See, e.g.*, *Vercelli v. World Courier, Inc.*, No. 1:11cv944, 2012 U.S. Dist. LEXIS 113146, at *22 (E.D. Va. Aug. 10, 2012) (Lee, J.) (Alexandra Div.) (plaintiff employed for approximately sixteen months); *Montgomery v. Ruxton Health Care, IX, LLC*, Civil Action No. 3:06cv024, 2007 U.S. Dist. LEXIS 30898, at *26 (E.D. Va. Apr. 26, 2007) (Payne, J.) (Richmond Div.) (plaintiff employed for approximately than ten months); *Jiggetts v. Am. Funds Group*, Civil Action No. 2:04cv634, 2006 U.S. Dist. LEXIS 30672, at *16 (E.D. Va. May 8, 2006) (Friedman, J.) (Norfolk Div.) (plaintiff employed less than three months).

Although the same actor inference remains a rebuttable inference, Georges cannot point to any facts in the record that defeat the application of this inference. Nor are there facts that rebut the inference given the absence of any allegations that DPS engaged anything such as discriminatory comments or remarks, or that Georges ever complained to DPS about discrimination while employed. *See* Fact Nos. 43–44. In fact, it is undisputed that Georges and her supervisor, Johnson, got along well. *See* Fact No. 15.

### 5.   Johnson Was Unaware of Plaintiff's Age When Making Hiring and Firing Decisions.

Some courts have granted summary judgment to employers when the decision maker was unaware of the plaintiff's protected trait.  *See, e.g.*, *Gladden v. Locke*, Civil No. PJM 10-1665, 2011 U.S. Dist. LEXIS 58585, *14 (D. Md. 2011) ("[T]he Fourth Circuit has held that the protected status must have actually played a role I the employee's decision-making process.  For this to be so, there obviously must be some indication that the deciding officials were aware of the applicant's status as a protected individual." (citation omitted)) (determined under Title VII, which may be enforced under the lesser "mixed-motive" standard than the ADEA's "but for" standard); *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1200–01 (10th Cir. 2008) ("And we have long explained that information of which an employer is unaware cannot be inferred to be the basis for the employer's decision to take action against the employee.") (finding no inference of age discrimination and awarding summary judgment to employer where spreadsheet of employees' ages was not accessible to managers involved in making adverse employment decisions); *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 798–99 (3d Cir. 2003) (affirming summary judgment for employer where decision maker unaware of plaintiff's age at time of termination).  This makes perfect sense because an employer cannot take action because of a factor of which the employer was unaware.

Here, Johnson, who was the sole decision maker behind Georges's termination, testified that age was not only not a factor to her decision to end Plaintiff's employment, but also that she did not have knowledge about George's age.  Exhibit C at 38:14 ("I didn't even know her age.")  Without knowledge about George's age, it defies logic for Georges to assert that DPS had any discriminatory animus with respect to her age.  It is even more of a stretch to find DPS liable as a

25

matter of law for terminating Georges's employment *because of* her age, which is the ultimate

inquiry under the ADEA. *See Hartman*, 595 F. App'x at 181 (citations omitted).[9]

### c. Plaintiff Failed to Mitigate Her Damages.

Setting aside the merits of Plaintiff's ADEA claims, the Court should rule as a matter of

law that Plaintiff's Complaint should be barred for her failure to mitigate her damages.  It is well

established that "[t]he duty to mitigate damages requires that the claimant be reasonably diligent

in seeking and accepting new employment substantially equivalent to that from which she was

discharged. . . . Indeed, the claimant 'forfeits his right to back pay if he refuses a job substantially

equivalent to the one he was denied.'"  *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273

(4th Cir. 1985) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982))).  Accordingly,

"the offending employer is made responsible only for losses suffered by the claimant as a result

of the discrimination.  That is, the employer's back pay liability is not to be increased as a result

of losses willingly incurred by the claimant."  *See Brady*, 753 F.2d at 1278 (citing *Ford Motor

Co.*, 458 U.S. at 231).  Failure to mitigate has been recognized in the Fourth Circuit as a total bar

to recovery suitable for awarding an employer summary judgment without reaching the merits of

a plaintiff's ADEA claim where an employee demonstrated a total failure to seek alternative

employment following his termination.  *See Bossalina v. Lever Bros., Inc.,* No. 86-2158, 1988

U.S. App. LEXIS 19559, at *6–7 (4th Cir. May 31, 1988) (citing *Brady*, 753 F.2d at 1278).

---

[9] Curiously, in Georges's Interrogatory Response No. 8, for the first time, she states that she is a cancer survivor and that "I do not presently know if I was fired because of my medical history." Exhibit E at Interrog. Resp. No. 8; *see also* Fact No. 47.  In supplemental documents produced to counsel on March 13, 2018, Georges's own notes to her attorney reveal that she is speculating about whether she was terminated because of her medical history of cancer.  *See* **Exhibit G** (GEORGES-SUPP-000001).  Yet, DPS had no knowledge of this medical history.  Exhibit D at 49:24–50:20.  To the extent Georges expresses such doubt about DPS's discriminatory intent, she herself undercuts her ultimate burden of proving that she was terminated *because of* her age.

Thus, a defendant should not be held liable for all or part of a plaintiff's damages that should reasonably have been avoided. "

Here, Georges testified that despite having a Master's degree in Organizational and Human Resources Development, she never applied to any positions in the human resources field after her termination from employment with DPS. *See* Fact No. 48. She further testified that her hourly rate of employment since her termination from DPS has ranged from $16 per hour to $19.24 per hour. *See* Fact Nos. 49–51. Moreover, she received benefits including health, dental, and retirement. However, effective January 2, 2018, she resigned her position at Loudoun County Public Schools where she received $19.24 per hour to work at a lower-paying, temporary staffing position at a rate of $18 per hour. *See* Fact Nos. 51–52.

This undisputed evidence establishes that post-termination, Georges failed to seek any positions that were substantially equivalent to her role as a Benefits Implementation Specialist at DPS, or any role that utilized her supposed extensive educational background and industry experience in the field of human resources. *See* Fact No. 48. The evidence also shows that Georges failed to maintain the highest possible hourly rate of employment available to her in an effort to mitigate her alleged lost wages, by leaving an otherwise stable position with Loudoun County at a rate of $19.24 per hour and taking a temporary, staffing position at a rate of $18 per hour, with no benefits. In sum, Georges has not only failed to find work substantially equivalent to her position at DPS, but also taken a voluntary pay cut, including a loss of benefits.

These facts alone establish as a matter of law that Georges failed to mitigate her damages, thus barring her from a total recovery of the losses she seeks. By failing to utilize her qualifications to seek substantially equivalent employment from what she had at DPS, she fails to meet her duty to mitigate her damages and forfeits her right to back pay as a matter of law.

*See Brady*, 753 F.2d at 1273. The Court should grant summary judgment to DPS as to its affirmative defense and find that Georges is not entitled all or part of her alleged back pay.

### d. Georges Cannot Recover Compensatory Damages For Pain and Suffering.

Further, this Court should bar Georges from any recovery of damages she claims based on "embarrassment, inconvenience, humiliation, severe mental anguish, pain, and suffering" and other damages not expressly permitted under the ADEA. *See* Compl. ¶ 31. The Fourth Circuit has long held that "pain and suffering damages should not be allowed in ADEA actions . . . ." *Slatin v. Stanford Research Inst.*, 590 F.2d 1292, 1296 (4th Cir. 1979); *see Cyr v. Perry*, 301 F. Supp. 2d 527, 536 (E.D. Va. 2004) (Alexandria Div.) (Ellis, J.). The Supreme Court of the United States has confirmed this rule, stating "the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." *Comm'r v. Schleier*, 515 U.S. 323, 326 (1995). Thus, Georges may not recover compensatory damages, including damages for pain and suffering or emotional distress. Indeed, Georges has offered no evidence to substantiate her prayer for such damages, having confirmed that she has suffered no health consequences as a result of her termination from DPS. Fact No. 47. Summary judgment is appropriate to find that Plaintiff is barred from some of the recovery she seeks as a matter of law.

### e. Georges Cannot Recover Punitive or Liquidated Damages.

As a final point, the Court should rule as a matter of law that Plaintiff is barred from seeking punitive damages. The Complaint is devoid of an explicit request for punitive damages; Georges appears to seek only damages to make her whole and attorney's fees. *See* Compl. at 6. Accordingly, Georges has waived any claim to punitive damages under the ADEA. *See Peddie v. United States*, Case No. 2:95CV00792, 1996 U.S. Dist. LEXIS 20008, at *8 n.5 (M.D.N.C. Dec. 16, 1996) (ruling plaintiffs explicitly requested only statutory damages in their pleading,

thereby waiving their claim for punitive damages); *see also Franzoni v. Hartmax Corp.*, 300 F.3d 767, 773 (7th Cir. 2002); *Boise v. Boufford*, 121 F. App'x 890, 892 (2d Cir. 2005).

More importantly, Georges cannot point to any evidence in the record of DPS taking any discriminatory action intentionally, much less willfully, wantonly, or with reckless disregard. Thus, any attempt to seek statutory liquidated damages for "willful" violations, *see* 29 U.S.C. § 626(b), has no basis in fact in this case.

## IV.   CONCLUSION

Plaintiff's claim amounts to mere speculation.  This is all the more evident by her vague and unsupported claim for damages, which she describes generally as "[s]omething sufficient regarding the salary until I retire."  *See* Exhibit B at 38:16–39:7.  The scant allegations of her Complaint have no basis in reality upon the close review of sworn testimony, affidavits, and business records established through discovery.  Indeed, Georges has been revealed to have mistaken some of the basic facts of her claim, such as Gleason's pay and qualifications, and she offers no evidence to substantiate her theories of pretext.  In the absence of more, the obvious alternative explanation for Georges's termination now exists: DPS needed to end its employment of a low-performing worker.

For Georges's failure to establish any evidence tending to support her bald claim that she was terminated because of her age, the Court should award DPS summary judgment and dismiss the Complaint with prejudice.

Dated: March 16, 2018

Respectfully submitted,

DOMINION PAYROLL SERVICES, LLC

By Counsel

/s/ Brian G. Muse

Brian G. Muse (VSB No. 47218)
Faith A. Alejandro (VSB No. 80076)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, VA  23218-1998
Phone:  (804) 648-1636
Facsimile:  (804) 783-7291
E-Mail:     bmuse@sandsanderson.com
                  falejandro@sandsanderson.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to the following:

Paul L. Warren, Esq.
Jennifer Warren, Esq.
Jameson Goodell, Esq.
Warren & Associates, PLC
409 Duke Street
Suite 100
Norfolk, VA  23510
(757)274-0055
*Counsel for Plaintiff*
E-mail:        pwarren@warrenplc.com
               jwarren@warrenplc.com
               jgoodell@warrenplc.com

                                    /s/ Brian G. Muse
                                    Brian G. Muse (VSB No. 47218)
                                    Faith A. Alejandro (VSB No. 80076)
                                    SANDS ANDERSON PC
                                    1111 East Main Street, Suite 2400 (23219)
                                    Post Office Box 1998
                                    Richmond, VA  23218-1998
                                    Phone:  (804) 648-1636
                                    Facsimile:  (804) 783-7291
                                    E-Mail:        bmuse@sandsanderson.com
                                                   falejandro@sandsanderson.com