IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANGELA GEORGES,

    Plaintiff,

v.                                                            Civil Action No. 3:16cv777

DOMINION PAYROLL SERVICES, LLC,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Dominion Payroll Services, LLC's ("Dominion") Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56.[1] (ECF No. 41.) Plaintiff Angela Georges responded, (ECF No. 54), and Dominion replied, (ECF No. 57). The Court heard oral argument on May 3, 2018. Accordingly, the matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[2] For the reasons that follow, the Court will grant the Motion for Summary Judgment.

---

[1] Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

> (a) **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## I. Factual and Procedural Background

### A. Procedural History

Georges filed her Complaint against Dominion on September 19, 2016. (ECF No. 1.) Georges's Complaint alleges one count: "Violations of the Age Discrimination in Employment Act [the 'ADEA'']."[3] (Compl. 5, ECF No. 1.) Georges asserts membership in the class of people protected by the ADEA because she is over forty years old. She contends that Dominion wrongfully terminated her by intentionally discriminating against her on the basis of age. Georges claims to have suffered damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expenses, consequential damages, and statutory damages.

Dominion filed a Motion to Dismiss, contending that Georges failed to state a claim upon which relief could be granted, which the Court denied. The Court held an Initial Pretrial Conference and set the case for a three-day jury trial to begin May 1, 2018. Discovery proceeded in accordance with the Initial Pretrial Order. After an extension of time based on difficulties Georges had with her proposed expert, Dominion timely filed the Motion for Summary Judgment. Dominion contends that no genuine issues of material fact exist, and it is entitled to summary judgment on Georges's claim of age discrimination.

---

[3] The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

2

B.   **Factual History**[4]

   1.   **The Process of Hiring Georges**

Dominion hired Angela Georges as a Benefits Implementation Specialist on April 21, 2015. Georges was fifty-one at the time Dominion hired her. The position was full-time, Georges was salaried at $21.15 per hour, and she reported to Laura Johnson,[5] Director of Benefits. Johnson also was the person who decided to hire Georges.

Before being hired, Georges applied for the position online, and Lora Meade,[6] Vice President of Human Resources, contacted Georges and scheduled an interview. Georges went through four separate interviews: she interviewed with Meade, Johnson, David Gallagher, Chief Executive Officer, and David Fratkin, President. Johnson ultimately decided to hire Georges because, after interviewing Georges and reviewing her resume, Johnson believed Georges was qualified for the position.[7] On April 21, 2015, Georges signed her offer letter and accepted the position.

---

[4] In recounting the factual history, the Court sets forth the undisputed facts as set forth in the parties' briefing on the Motion for Summary Judgment and the record submitted to the Court. In ruling on the Motion for Summary Judgment, the Court will view the undisputed facts and all reasonable inferences therefrom in the light most favorable to Georges, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). At this stage, however, the Court merely states the undisputed facts.

[5] Between the time Dominion hired Georges and when the parties took depositions in this case, Johnson changed her last name to Perry. For the sake of clarity, the Court will refer to her as Johnson.

[6] Between the time Dominion hired Georges and when the parties took depositions in this case, Meade changed her last name to Mullins. For the sake of clarity, the Court will refer to her as Meade.

[7] Georges had a Master's Degree in Organizational and Human Resources Development from the University of Mary Washington. Her resume listed proficiency in "Microsoft Office Suite . . . , Quickbooks Online, Lacerte Tax, [and] Salesforce." (Georges Resume 1, ECF No. 54-5.) Her resume also identified her as: (1) having "[n]early a decade of [f]inancial

3

## 2. The Benefits Administration Department and the Benefits Implementation Specialist Job Requirements

The Benefits Implementation Specialist position was a newly-created position, and was part of the Benefits Administration Department, a new department of Dominion. The Benefits Implementation Specialist position's purpose was to provide Dominion clients with payroll and human resources support related to implementing regulations under the Affordable Care Act (the "ACA"). Because the Benefits Administration Department and the services it provided were new, the Benefits Implementation Specialist position involved utilizing technology and products new to Dominion's clients and Dominion's employees. Before working at Dominion, Georges, like the other members of the Benefits Administration Department, had no experience either implementing the ACA regulations or using the software Dominion used to support its clients.

The requirements for the Benefits Implementation Specialist position included:

(1) [An] Associate Degree from an accredited school with a minimum of three years of experience in employee benefits or equivalent combination of education and experience . . . . ;

(2) [Understanding of] the functionality and intention of benefits administrative systems;

(3) Knowledge of all pertinent federal and state regulations affecting employee benefits;

(4) Strong analytical and problem solving skills;

(5) [Ability to be a s]trategic thinker who works well in a team environment, brings innovation, creativity and critical thinking to the table;

(6) [Ability to be] motivated, proactive and exhibit strong project management skills in order to meet client deadline in a timely manner;

(7) Excellent communication skills verbal and written;

---

[s]ervices expertise at many levels"; (2) someone with "[s]uperior communication and interpersonal skills"; (3) a "[c]omplex problem solver," and; (4) a "[h]ighly motivated self[-]starter." (*Id.*)

(8) Strong presentation skills for online and on site client training when necessary;

(9) [Flexibility] to [work] overtime when necessary;

(10) Demonstrated ability to provide high level of customer service;

(11) Proficient knowledge of Microsoft Office programs, advanced knowledge in Excel; [and,]

(12) Must be tech savvy.

(Job Description 1, ECF No. 54-5.)

At the time Georges began working at Dominion, the Benefits Administration Department had been in existence for approximately two months, and had two members other than Georges. When the Benefits Administration Department began in March of 2015, Johnson was the only person working in the department.[8] That same month, Johnson hired Leanna Follis as a Benefits Implementation Specialist. Follis was fifty-three years old when Johnson hired her, and Follis worked at Dominion until May 2017, when she voluntarily resigned.

While Georges worked at Dominion, she and Follis held the same job title and had approximately the same workload. Georges and Follis also went through the same training process. Johnson trained Georges and Follis in various ways, including "walk[ing] them through step by step how to work the system, [and] how to build the system" during weekly team meetings. (Johnson Dep. 20, ECF No. 54-2.) Much time during the team meetings was "spent on the technical aspect of building the system and some of it was spent on turnaround times, workloads." (*Id.* at 21.) Johnson also used the meetings as an "open forum" for her employees to ask questions. (*Id.*) Johnson "gladly answered" questions about how to perform the job functions when asked, and as part of her training process, Johnson spent time "sitting at [Follis's and Georges's] desk[s] . . . and answering questions." (*Id.* at 20–21.) Johnson also "always

---

[8] Johnson voluntarily resigned her position with Dominion in November 2015.

5

made it a point to seek out anybody that did not feel comfortable or [she] sensed . . . did not feel comfortable," and she would "help and protect [her] employees [who] made mistakes." (*Id.* at 22.)

In April 2015, soon after the Benefits Administration Department had been formed, Johnson began "ha[ving] conversations [with her supervisors] about bringing" Jesica Gleason,[9] a Dominion employee working in another department, to the Benefits Administration Department. (*Id.* at 13.) Sometime between May and June of 2015, when Gleason was twenty-six years old, she became a Benefits Implementation Specialist. When she transferred to the Benefits Administration Department, Gleason underwent the same training that Follis and Georges had. Gleason worked alongside Georges for approximately two months before Dominion terminated Georges's employment. However, Johnson gave Gleason "probably five times the work" that she gave Georges and Follis because Gleason "asked for it, and she was completing the jobs and getting positive feedback from clients." (*Id.* at 36.)

### 3. Problems with Georges's Job Performance and the Decision to Terminate Her Employment

In addition to the training that all Benefits Implementation Specialists received, Johnson gave Georges extra training when she noticed Georges making mistakes. Johnson would "[s]it[] at [Georges's] desk, going over exactly what was done incorrectly, why it was done incorrectly, [and] how it could be done differently." (*Id.* at 22–23.) Johnson also gave Georges positive feedback for some of the work Georges performed. Specifically, Johnson testified that she recalled Georges completing one of the first tasks Johnson gave her, and Georges "completed the first few steps correctly and [Johnson] told [Georges] she was doing a good job." (*Id.* at 26.)

---

[9] Gleason had begun working for Dominion in August of 2009. Between 2009 and 2013, she had been promoted three times.

6

During the two-and-a-half months that Georges worked at Dominion, Johnson received complaints from three of Georges's clients—the first one in May, the same month of Georges's hiring. Johnson did not document or discuss with Georges the first complaint she received, and instead "protected [Georges] about that initial complaint, gave her the benefit of the doubt, scheduled more training, [and] sat with her at her computer for hours multiple times." (*Id.* at 30.)

Johnson testified that when she called clients and asked for feedback on the services Dominion was providing, "it was a common theme that [Georges] was nonresponsive." (*Id.* at 31.) The clients stated they were "providing data to [Georges], providing things to her[,] and [Georges was] taking no action on the next steps in building the benefits system[;] basically letting it all sit in her in box [sic]." (*Id.* at 29.) Johnson stated that Georges rarely came to her with questions and did not raise concerns about her workload. However, when Johnson looked into Georges's progress, "others would have their work done, [but Georges's] wouldn't even be started." (*Id.* at 31.) Johnson testified that she could not recall Georges "ever completing a task on her own," and "[t]hat was the biggest issue, zero attempts and zero communication around what we didn't know. So I am thinking that things are being worked on when they are just sitting at a stalemate." (*Id.* at 32.)

Johnson also testified that "at least five or six times," likely during the month of June, she saw Georges using Zillow and Facebook on her work computer during the day. (*Id.* at 32–33.)

Johnson never documented[10] these occurrences, but stated that she addressed with Georges her use of her work computer for personal purposes.[11]

On July 6, 2015, Johnson wrote herself an email documenting a conversation she had with Georges.[12] The email's subject line was "conversation with kiki,"[13] and it stated in full:

> Relayed my concern with her acting like she was completely comfortable and having lots of issues arise
> Client said she wasn't very responsive and felt like she was having to chase her down
> She claims that she felt like she was thrown to the wolves
> However[,] I spend lots of time with them training and I rarely hear from her when I assign a task – other than she knows what she's doing

(Johnson Email, ECF No. 42-1.)

Dominion terminated Georges's employment on July 13, 2015. Johnson and Meade were involved in the conversation during which Georges was informed of her termination. Johnson, with permission from Fratkin and Gallagher, made the ultimate decision to terminate Georges's

---

[10] Johnson also testified that it was not her usual habit to give feedback—either positive or negative—in written form. She testified:

> Most of the communication that I had with my employees I felt was better face to face so that you could get a sense of what they were feeling. I feel like that e-mail can be misinterpreted sometimes. And I think that, positive or negative, it is always best to have the conversation in person.

(Johnson Dep. 26.)

[11] Georges testified that Johnson "did not" speak with her about her use of social media. (Georges Dep. 35.) Georges also testified that she "may have once or twice" used her personal Facebook account during her employment at Dominion, and that she used social media while at work "[t]o get contact information for clients." (Georges Dep. 35–36.)

[12] Georges testified that she did not recall Johnson speaking with her about not being responsive to clients.

[13] Georges was called by the nickname "Kiki" at Dominion.

employment. Johnson testified that she decided to end Georges's employment at Dominion because of "[l]ack of performance," and not because of Georges's age. (Johnson Dep. 38.)

Georges testified that she was "completely shocked" by Johnson's decision to terminate her employment. (Georges Dep. 44, ECF No. 54-3.) She stated that Johnson "had told me in the past that I was doing a great job verbally and in writing through an email." (*Id.*)

## II. Analysis: The Motion for Summary Judgment

### A.     Standard of Review:  Summary Judgment

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson*, 477 U.S. at 248–50. Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves–Humphreys Co.*, 818

F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24). Where the court is faced with cross motions for summary judgment, as in the instant case, the court must review each motion separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

### B. The Court Will Grant the Motion for Summary Judgment

Dominion argues that summary judgment is appropriate because: (1) Georges cannot establish a prima facie case of age discrimination in violation of the ADEA; (2) even assuming that she can establish a prima facie case, Dominion has proffered a legitimate, nondiscriminatory reason for terminating Georges's employment, and Georges cannot establish that Dominion's reason is pretextual; and, (3) Georges cannot recover damages because she failed to mitigate. Georges responds that she *has* established a prima facie case of age discrimination; that she *can* establish that Dominion's proffered reason for terminating her employment was pretextual; and that she did not fail to mitigate her damages in a way that would bar her from any recovery.

Even assuming that Georges established a prima facie case of age discrimination in violation of the ADEA, Dominion has proffered a legitimate, nondiscriminatory reason for terminating Georges's employment. Viewing the record as a whole and in the light most favorable to Georges, no genuine dispute of material fact exists, and Georges cannot establish by a preponderance of the evidence that Dominion's reason is pretextual. Accordingly, the Court must grant Dominion's Motion for Summary Judgment.

#### 1. Legal Standard: Employment Discrimination Based on Age

The ADEA prohibits employers from discharging "or otherwise discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff bringing a

discrimination claim under the ADEA must prove that age was not merely a motivating factor of the challenged adverse employment action but was in fact its "but-for" cause. *Hartman v. Univ. of Md. at Baltimore*, 595 F. App'x 179, 181 (4th Cir. 2014) (citations omitted).

A plaintiff can show cause either through direct evidence of intentional discrimination or through the indirect, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its progeny. Under the *McDonnell Douglas* burden-shifting scheme, an ADEA plaintiff must initially establish by a preponderance of the evidence a prima facie case of age discrimination. *See, e.g., Bailey v. Anne Arundel Cty., Md.*, 259 F. Supp. 2d 421, 425 (D. Md.), *aff'd*, 81 F. App'x 798 (4th Cir. 2003) (per curiam). Once the plaintiff makes a prima facie case of age discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action" or so-called "but for" causation will be presumed. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). Once the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action at issue, the plaintiff must offer evidence from which a jury could find that the employer's asserted justification for the adverse employment action was pretextual. *McDonnell Douglas*, 411 U.S. at 802.

As discussed below, viewing the record as a whole and in the light most favorable to Georges, Georges fails to produce sufficient evidence from which a reasonable jury could conclude that Dominion's proffered legitimate, nondiscriminatory reason for terminating her employment was pretextual. Accordingly, the Court must grant Dominion's Motion for Summary Judgment.

## 2. The Prima Facie Case of Age Discrimination

To establish a prima facie ADEA case under the adapted *McDonnell Douglas* scheme, Georges must show:

> (1) she is "a member of a protected class"—that is, forty years or older; (2) she "suffered adverse employment action;" (3) she "was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open" or she was replaced by a substantially younger person.

*Hartman*, 595 F. App'x at 181 (quoting *Hill*, 354 F.3d at 285).

Dominion contends that Georges cannot establish a prima facie case of discrimination because she fails to establish the third and fourth elements—that she was meeting Dominion's legitimate expectations at the time it terminated her employment, and that the position remained open or Georges was replaced by someone substantially younger. Specifically, Dominion argues that Johnson testified that Georges was not performing her job in a satisfactory manner at the time it terminated her employment, and Georges cannot point to any "competent, relevant evidence" that she met Dominion's legitimate expectations. (Mem. Supp. Mot. Summ. J. 15–16, ECF No. 42.) Moreover, Dominion asserts that Georges cannot establish that she was replaced by someone substantially younger because Gleason—the individual Georges points to as her replacement—became a Benefits Implementation Specialist *before* Georges's employment was terminated. After Georges left Dominion, "the department's work simply continued for a time with two employees, rather than three." (*Id.* at 16.)

Georges argues that Dominion's "claimed expectations of Ms. Georges were not well-defined, such that a legitimate fact question exists as to what the expectations were" because the Benefits Administration Department was new, and because Georges was never given an

employee handbook.[14] (Resp. Mot. Summ. J. 11, ECF No. 54.) Georges also contends that she has produced sufficient evidence to establish that "following [her] termination, her position either remained open or she was replaced by Ms. Gleason or Ms. Alvis,[15] both of [whom] were

---

[14] Georges makes much of Dominion's failure to provide her with an employee handbook. She seeks to introduce expert testimony "regarding industry standards related to the promulgation of employee handbooks and [to] provide context for what [Dominion's] failure to do so means to this case." (Resp. Mot. Summ. J. 10.) In a separate Memorandum Opinion issued today, the Court struck Georges's proposed expert testimony. (*See* May 4, 2018 Mem. Op., ECF No. 59.)

Regardless, Georges cites no authority—and the Court finds none—establishing that an employer must distribute an employee handbook in order to establish what legitimate expectations it has for its employees. Indeed, as discussed fully in the Court's Memorandum Opinion on Dominion's Motion to Strike, (ECF No. 59), even the authorities Georges's proposed expert cited acknowledged that, although an employee handbook is an important tool for an organization, it does not amount to a necessary standard that all employees *must* meet. (*See* May 4, 2018 Mem. Op. 10, ECF No. 59.)

Finally, absent evidence of discriminatory motive, the employer's method of evaluating an employee's job performance must be left to the employer's discretion. *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997) (citing *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in [an ADEA] action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment.")). Georges produces no evidence of discriminatory motive in the way Dominion evaluated her job performance. The Court cannot find that Dominion's failure to provide her with an employee handbook renders Dominion's expectations illegitimate.

[15] Georges identifies Melissa Alvis, age thirty-six, as an alternative replacement to Gleason. Georges contends that in September of 2015, Dominion transferred Alvis, who was working in another Dominion Department, to the Benefits Administration Department to serve as a Benefits Implementation Specialist. Georges asserts that "[e]ven if the trier of fact found that Ms. Gleason did not replace Ms. Georges, it would be forced to consider that Ms. Alvis—who entered the department just two months after Ms. Georges'[s] firing—was under forty (40) years old and also fell outside the protected class." (Resp. Mot. Summ. J. 16.)

In support of her claims regarding Alvis, Georges cites only to Dominion's Answers to Georges's First Interrogatories. Dominion's Answers to Georges's First Interrogatories are signed by Dominion's counsel. When an attorney signs interrogatories for a corporate client, the attorney must "make[] oath that to the best of his [or her] knowledge, information[,] and belief[,] the answers are true and contain all information . . . available to the corporation on the interrogatories [that] are being answered." *Fernandes v. United Fruit Co.*, 50 F.R.D. 82, 86 (D. Md. 1970). Dominion's Answers to Georges's First Interrogatories contain no such oath.

"[U]nsworn, unsigned answers to interrogatories do not meet the requirements of F[ederal] R[ule of] Civ[il] P[rocedure] 56(e)," now Rule 56(c)(4). *Roberts v. Gen. Elec. Co.*, 1 F.3d 1234, at *1 n.3 (4th Cir. 1993) (unpublished table opinion) (citing *Adickes v. S.H. Kress &*

13

individuals not within the protected class." (*Id.* at 16.) Accordingly, Georges contends that she has established a prima facie case of age discrimination.

Despite the parties' disagreement, the Court assumes for the purposes of the Motion for Summary Judgment that Georges has established a prima facie case of age discrimination under the ADEA. Accordingly, the burden shifts to Dominion to articulate a legitimate, nondiscriminatory reason for terminating Georges's employment.

### 3. Dominion Has Asserted a Legitimate, Nondiscriminatory Reason for Terminating Georges's Employment

Under the *McDonnell Douglas* burden-shifting scheme, once a plaintiff establishes a prima facie case of discrimination, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action at issue. *McDonnell Douglas*, 411 U.S. at 802. The employer's burden at this stage is one of *production*, not *persuasion*, and it involves "no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *see also Bailey*, 259 F. Supp. 2d at 425.

Here, Dominion asserts that it terminated Georges's employment because of her poor performance. Johnson testified that she decided to terminate Georges's employment because of "[l]ack of performance," and not because of Georges's age. (Johnson Dep. 38.) This statement alone would satisfy Dominion's burden at this stage. Failure to meet an employer's expectations

---

Co., 398 U.S. 144, 158 n.17 (1970); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992)). When ruling on a motion for summary judgment, a district court may properly decline to consider a party's interrogatory responses when the responses "were not properly attested." *Kincaid v. Anderson*, 681 F. App'x 178, 181 (4th Cir. 2017) (holding that the district court "did not abuse its discretion" by refusing to consider a plaintiff's improperly attested responses to interrogatories when ruling on the defendants' motions for summary judgment).
  Neither party raises the insufficiency of Dominion's interrogatories for supporting a motion for summary judgment, but the Court need not reach this issue. As discussed above, the Court assumes for the purposes of the Motion for Summary Judgment that Georges has established a prima facie case of age discrimination. Accordingly, the Court need not determine whether Georges has produced evidence sufficient to establish that she was replaced by a substantially younger person.

clearly constitutes a legitimate, nondiscriminatory reason for terminating employment, and at this stage the Court undertakes no credibility assessment regarding Dominion's proffered reason. *See, e.g., Hicks*, 509 U.S. at 509.

However, Dominion also offers more specific evidence regarding its decision to terminate Georges's employment. Johnson testified that when she called clients and asked for feedback on the services Dominion was providing, they commonly reported that Georges "was nonresponsive." (Johnson Dep. 31.) The clients stated they were "providing data to [Georges], providing things to her[,] and [Georges was] taking no action on the next steps in building the benefits system[;] basically letting it all sit in her in box [sic]." (*Id.* at 29.) Johnson stated that, although Georges rarely came to her with questions and did not raise concerns about her workload, when Johnson looked into Georges's progress, although "others would have their work done, hers wouldn't even be started." (*Id.* at 31.) Johnson testified that she could not recall Georges "ever completing a task on her own," and "[t]hat was the biggest issue, zero attempts and zero communication around what we didn't know. So I am thinking that things are being worked on when they are just sitting at a stalemate." (*Id.* at 32.)

Johnson also stated that, although much of the training was informal and the systems were new, she "gladly answered" questions about how to perform job functions. (*Id.* at 20–21.) She recounted that she spent time one-on-one with Georges answering her questions, and "always made it a point to seek out anybody that did not feel comfortable or [she] sensed . . . did not feel comfortable," and she would "help . . . employees that made mistakes." (*Id.* at 22.) She testified that she gave Georges extra training when she noticed Georges making mistakes by "[s]itting at her desk, going over exactly what was done incorrectly, why it was done incorrectly, [and] how it could be done differently." (*Id.* at 22–23.)

15

Accordingly, Dominion has met its burden of providing a legitimate, nondiscriminatory reason for terminating Georges's employment. The burden now shifts to Georges to establish that Dominion's proffered reason is pretextual.

### 4. <u>Georges Fails to Establish Pretext</u>

Once the defendant has articulated a legitimate, nondiscriminatory explanation for its adverse employment decision, the burden shifts back to the ADEA plaintiff to prove by a preponderance of the evidence that the proffered explanation was pretextual and the defendant intentionally discriminated against him or her on the basis of age. *O'Connor v. Consol. Coin Caterers Corp.*, 84 F.3d 718, 719 (4th Cir. 1996). In order to defeat Dominion's Motion for Summary Judgment, Georges must point to evidence in the record from which a reasonable jury could infer that Dominion terminated her employment because of her age, or that Dominion's proffered legitimate, nondiscriminatory reason for the adverse employment action was otherwise a pretext for unlawful discrimination. *Id.* A defendant is entitled to summary judgment on a claim of discriminatory hiring or firing unless the trier of fact could, on the record before the court, "reasonably infer that the [employer's] explanation for the action taken was false and . . . 'the employer [was] dissembling to cover up a discriminatory purpose.'" *Bailey*, 259 F. Supp. 2d at 430 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)). Moreover, "when an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [challenged action]." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000).

Even viewing the record as a whole and in the light most favorable to Georges, she fails to establish pretext. First, the so-called "same actor inference" instructs that "in cases where the

hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991). This is so, in part, because "'[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'" *Id.* (quoting John J. Donohue, III & Peter Siegelman, *The Changing Nature of Employment Discrimination Litigation*, 43 Stan. L. Rev. 983, 1017 (1991)). Georges cannot overcome the same actor inference.[16] The undisputed facts indicate that Johnson made the ultimate decision to both hire and discharge Georges within a

---

[16] Georges argues that the same actor inference "is inappropriate for use at the summary judgment stage, where the non-moving party receives the 'benefit of all favorable inferences.'" (Resp. Mot. Summ. J. 19 (quoting *Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 275 (4th Cir. 1995).) Georges, however, cites to no case from the United States Court of Appeals for the Fourth Circuit or from a district court within the Fourth Circuit for this proposition.

Moreover, the Fourth Circuit has stated that "it is likely that the compelling nature of the inference arising from [situations in which the same person hires and discharges an employee within a short time span] will make cases involving this situation *amenable to resolution at an early stage*." *Proud*, 945 F.2d at 798 (emphasis added); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (reviewing a district court's grant of summary judgment to a Title VII defendant and stating that "because Houseman is the same person who hired Evans, there is a 'powerful inference' that the failure to promote her was not motivated by discriminatory animus" (quoting *Proud*, 945 F.2d at 798)); *Montgomery v. Ruxton Health Care, IX, LLC*, No. 3:06cv024, 2007 WL 1229708, at *7 (E.D. Va. Apr. 26, 2007) (granting summary judgment to the defendant employer, and noting that "[a]pplication of the *Proud* inference generally makes an ADEA action 'amenable to resolution at an early stage,' because '[i]t hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job'" (alterations in original) (quoting *Proud*, 945 F.2d at 797–98)).

Furthermore, the nonmoving party at summary judgment is entitled to all *reasonable* inferences. *Anderson*, 477 U.S. at 255. Because "'[c]laims that employer animus exists in termination but not in hiring seem *irrational*,'" *Proud*, 945 F.2d at 797 (emphasis added), the Court sees no reason the same actor inference could not apply at the summary judgment stage— especially in situations such as this one in which the same person hired and discharged the employee within a two-and-a-half month time period. Inferring that decisionmaker to have acted from age-related animus would not be *reasonable*. Regardless, the Court need not decide whether applying the same actor inference is appropriate in this case because, as discussed, Dominion is entitled to summary judgment even without benefit of the same actor inference.

three-month time span, creating a "strong inference . . . that discrimination was not a determining factor for the adverse action taken by [Dominion]." *Proud*, 945 F.2d at 797. Nothing in the record overcomes this presumption. Indeed, Johnson also hired but did not discharge Follis, fifty-three at the time of her hiring,[17] further strengthening the inference that age discrimination was not a determining factor in Johnson's decision to terminate Goerges's employment.

Nonetheless, even without the application of the same actor inference, each of Georges's arguments regarding pretext falters. Georges asserts that pretext exists because she never received an employee handbook and Lollis corroborated Georges's contentions that she did not receive proper training; Dominion produced "only one piece of contemporaneous documentation" mentioning its concerns with Georges's performance; and Georges had communicated to Johnson that "she felt like she was being 'thrown to the wolves.'" (Resp. Mot. Summ. J. 17–18.) Georges contends that this information creates a dispute "such that a trier of fact must be impaneled to sift through the conflicting statements." (*Id.* at 18.)

Initially, Georges cannot establish pretext based on her failure to receive an employee handbook or to undergo sufficient training. Even assuming that Dominion's failure to provide Georges with a handbook or with adequate training amounted to improper, unwise, or substandard employment practices, Georges produces no evidence that this failure was discriminatory. The Court's

> sole concern is "whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

---

[17] Although Johnson resigned in November 2015, before Follis left Dominion, it remains true that Johnson hired Follis, two years older than Georges, and did not terminate Follis's employment while Johnson was at Dominion. This strengthens the inference that Johnson did not act with discriminatory animus in terminating Georges's employment.

18

*DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410–11 (7th Cir. 1997)). Accordingly, Georges cannot establish pretext by pointing to Dominion's failure to give her an employee handbook or provide her with adequate training.

Next, Georges's arguments regarding the minimal amount of "contemporaneous documentation" of Johnson's concerns with Georges's job performance cannot establish pretext because the lack of contemporaneous documentation does not rebut Johnson's undisputed testimony that she believed Georges was not performing her job well. Moreover, Johnson's failure to contemporaneously document her assessment of Georges's work is consistent with Johnson's testimony that she gave most feedback, positive or negative, "face to face." (Johnson Dep. 26.) Furthermore, Georges's assertion that she "felt like she was being 'thrown to the wolves,'" (Resp. Mot. Summ. J. 18), and her testimony that she was "completely shocked at [her] termination, especially since [Johnson] had told [her] in the past that [she] was doing a great job,"[18] (Georges Dep. 44), cannot establish pretext for Dominion's asserted legitimate, nondiscriminatory reason.

In the context of discrimination suits, the Fourth Circuit "ha[s] repeatedly explained that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *DeJarnette*, 133 F.3d at 299 (internal quotations omitted). Further, "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence

---

[18] This statement, rather than creating a conflict, is consistent with Johnson's testimony that she recalled telling Georges "she was doing a good job" when Georges completed the first few steps of a task Johnson gave her correctly. (Johnson Dep. 27.)

19

of legitimate nondiscriminatory reasons for an adverse employment action."[19] *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (citing *Gairola v. Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1288 (4th Cir. 1985)).

Dominion produced substantial evidence that it terminated Georges's employment because it was dissatisfied with her job performance. Even viewing the record as a whole and in the light most favorable to Georges, Georges offers nothing that counters Dominion's evidence. Instead, Georges mentions irrelevant details that fail to establish pretext, such as Johnson's failure to contemporaneously document her displeasure with Georges's performance and Dominion's failure to provide her with an employee handbook. Because Dominion articulates a legitimate, nondiscriminatory reason for terminating Georges's employment, and Georges fails to promulgate evidence from which a reasonable jury could conclude that Dominion's proffered reasons were a pretext for age-related discrimination, the Court must grant Dominion's Motion for Summary Judgment.

### III. Conclusion

For the foregoing reasons, the Court GRANTS Dominion's Motion for Summary Judgment. (ECF No. 40.)

It is SO ORDERED.

/s/
M. Hannah Lauck
United States District Judge

Date: 5/4/2018
Richmond, Virginia

---

[19] Thus, Georges's testimony that Johnson "did not" address with her the use of social media, (Georges Dep. 35), that Georges "may have once or twice" used her personal Facebook account while at work, (*id.* at 35–36), and that she did not recall Johnson speaking with her about being unresponsive to clients do not create a genuine dispute of material fact and fail to establish that Dominion's proffered reason for terminating Georges's employment is pretextual.